UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

BRIAN J. KEGELMAN; and JOAN C. KEGELMAN,

Plaintiffs,

v. 6:24-CV-1472 (GTS/MJK)

TOWN OF OTSEGO,

Defendant.

---

APPEARANCES: OF COUNSEL:

BRIAN J. KEGELMAN
Plaintiff, *Pro Se*
251 Tripp Hill Road
Fly Creek, NY 13337

JOAN C. KEGELMAN
Plaintiff, *Pro Se*
251 Tripp Hill Road
Fly Creek, NY 13337

HANCOCK ESTABROOK, LLP — RYAN M. POPLAWSKI, ESQ.
Counsel for Defendant
1800 AXA Tower I
100 Madison Street
Syracuse, NY 13202

GLENN T. SUDDABY, United States District Judge

**DECISION and ORDER**

Currently before the Court, in this property rights action filed by Brian J. Kegelman and Joan C. Kegelman ("Plaintiffs") against the Town of Otsego ("Defendant"), is Defendant's motion to dismiss Plaintiffs' Second Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. Nos. 12, 13.) For the reasons set forth below, Defendant's motion is granted and Plaintiffs' Second Amended Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Plaintiffs' Second Amended Complaint

Plaintiffs filed their Complaint on December 4, 2024. (Dkt. No. 1.) Defendant filed a motion to dismiss related to the Complaint on February 6, 2025. (Dkt. No. 11.) Plaintiffs filed a response to that motion along with a cross-motion to amend the Complaint on March 17, 2025. (Dkt. No. 20.) After briefing on those motions was completed but before the Court rendered any decision on them, Plaintiffs filed a motion for leave to file a Second Amended Complaint. (Dkt. No. 39.) On August 19, 2025, the Court granted the motion for leave to file a Second Amended Complaint without deciding Defendant's motion to dismiss, which it denied without prejudice to refiling to account for the changes that had occurred as a result of the amendments and other subsequent developments. (Dkt. Nos. 54, 56.) Plaintiffs filed the Second Amended Complaint on August 25, 2025. (Dkt. No. 59.)

Generally, in the Second Amended Complaint, Plaintiffs assert that various actions taken by Defendant – specifically, actions that have caused water run-off (from two roads) to enter their property, resulting in flooding and erosion of their property – constitute a taking without just compensation in violation of the Fifth Amendment of the United States Constitution. (Dkt. No. 59.)

### B. Parties' Briefing on Defendant's Motion to Dismiss

#### 1. Defendant's Memorandum of Law

Generally, in its motion to dismiss, Defendant makes five arguments. (Dkt. No. 61, Attach. 15.) First, Defendant argues that Plaintiffs' claim for a taking under the Fifth and Fourteenth Amendments of the United States Constitution is barred by res judicata because

Plaintiff has asserted the same claim in state court actions, the claims there were conclusively decided on the merits, and his current claim arises out of the same transactions as the claims that were addressed in those state court actions. (*Id.* at 9-14.)

Second, Defendant argues that Plaintiffs' claim is also barred by collateral estoppel because the issue decided in the prior state court actions was the same one Plaintiffs ask the Court to decide here. (*Id.* at 14-15.)

Third, Defendant argues that Plaintiffs' Second Amended Complaint is time-barred on its face because the relevant conditions constituting the taking were known by 2014, and the fact that the claims and extent of damages were reasonably foreseeable well before this action was filed is corroborated by the fact that Plaintiffs have sued on these exact issues multiple times in the past. (*Id.* at 15-18.)

Fourth, Defendant argues that it is entitled to qualified immunity related to its creation of the relevant drainage systems that Plaintiffs allege contributed to the taking of his property through redirection of water runoff. (*Id.* at 18-19.)

Fifth, Defendant argues that the more recent road construction and other conduct outlined in the Second Amended Complaint (occurring in 2024 and 2025) were either completed on portions of roadway that do not run along or through Plaintiffs' property or were taken by private property owners rather than Defendant. (*Id.* at 19-20.)

**2. Plaintiffs' Opposition Memorandum of Law**

Generally, in opposition to Defendant's motion, Plaintiffs make six arguments. (Dkt. No. 65.) First, Plaintiffs argue that N.Y. Highway L. §§ 2 and 189 do not authorize the takings at issue because (a) those statutes permit maintenance and repair of existing highway aspects, but

do not authorize new changes beyond the extent of the existing lawful easement, (b) those statutes do not provide authority for Defendant to discharge stormwater onto private land without the existence of a drainage easement, (c) those statutes do not provide Defendant with a perpetual right to use the whole of the allotted 49.5 feet of the road easement, but rather New York's prescriptive use doctrine limits public rights to the portion of that easement that has been actually used or maintained for at least ten years, and (d) Plaintiffs have never conceded that Defendant holds any valid drainage easement related to the capacity of runoff being diverted to Plaintiffs' property. (*Id.* at 13-16.)

Second, Plaintiffs argue that this action is not barred by res judicata because the previous state court actions did not adjudicate the same issues that are relevant to Plaintiffs' claim here, specifically as Defendant itself argued in at least one of those state court actions that no federal takings claim was properly before that court. (*Id.* at 16-18.)

Third, Plaintiffs argue that this action also is not barred by claim preclusion because (a) the state court actions did not address or decide identical issues to those presented here, (b) the federal constitutional issues here have not been actually litigated or decided, (c) issues relevant to the questions presented here were not necessary to the judgments in the state court actions, and (d) Plaintiffs did not have a full and fair opportunity to litigate their federal constitutional claim in those other actions. (*Id.* at 18-20.)

Fourth, Plaintiffs argue that this action is not untimely because (a) a takings claim does not accrue until the relevant situation has stabilized, and the claim here did not stabilize in 2019 as Defendants argue given that Defendant was still pursuing additional actions that would affect the water runoff onto Plaintiffs' property after that time, (b) they were entitled to continue

pursuing their state court actions before resorting to filing a federal lawsuit, (c) Defendant continued to alter the drainage conditions while the various state court actions were ongoing, and each of those alterations constitute a physical invasion of their property that restarted the accrual clock, and (d) Supreme Court precedent that overruled a previous state-court exhaustion requirement did not impose an obligation to file a suit in federal court before the relevant taking stabilized or while state litigation was ongoing. (*Id.* at 20-23.)

Fifth, Plaintiffs argue that neither qualified immunity nor design immunity apply because (a) qualified immunity does not apply to municipalities, (b) Plaintiffs' claims do not involve any allegation that the relevant takings was caused by Defendant's decisions related to highway design, (c) Plaintiffs' claim relates to entirely new drainage systems that were installed rather than to maintenance of the existing highway or culverts, and (d) the Fifth Amendment imposes strict liability that applied once Defendant physically appropriated Plaintiffs' land. (*Id.* at 23-25.)

Sixth, Plaintiffs argue that Defendant's attempt to exclude actions taken by private landowners ignores the fact that Defendant's own actions caused the water issues alleged in the Second Amended Complaint regardless of any actions by those private landowners. (*Id.* at 26-29.)

**3. Defendant's Reply Memorandum of Law**

Generally, in its reply, Defendant makes three arguments. (Dkt. No. 72.) First, Defendant argues that Plaintiffs' action is barred by res judicata because previous state court proceedings decided whether Defendant was entitled to take the actions alleged to constitute a

taking in this current federal action, and Plaintiff raised the same claims premised on the same underlying circumstances in those state court actions. (*Id.* at 4-10.)

Second, Defendant argues that Plaintiffs' action is time-barred on its face and as shown by their own sworn affirmations. (*Id.* at 10-11.)

Third, Defendant argues that it is entitled to qualified immunity based on its nondelegable duty to keep the public roadways in reasonably safe condition, which includes the design of drainage systems intended to keep such roadways safe and clear of standing water. (*Id.* at 11-12.)

**4. Plaintiffs' Sur-Reply**

Generally, in their sur-reply, Plaintiffs make five arguments. (Dkt. No. 81.) First, Plaintiffs argue that N.Y. Highway L. § 189 grants an easement only for actual use of an existing roadway, not a statutory right-of-way applicable to the entire 49.5 foot section permitted by law. (*Id.* at 5-6.)

Second, Plaintiffs argue that Defendant's reliance on *Desmond v. Town of Summit*, 50 A.D.2d 984 (N.Y. App. Div. 3d. Dept. 1975) and *Flacke v. Town of Fine*, 113 Misc. 2d 669 (N.Y. Sup. Ct. Schoharie Cnty. 1985) is misplaced because those cases have never been endorsed by higher courts and indeed are contrary to the holdings of the New York Court of Appeals. (*Id.* at 6-7.) Plaintiffs also argue that *Hoffman v. Town of Shandaken*, 147 A.D.3d 1275 (N.Y. App. Div. 3d. Dept. 2017) does not stand for the proposition that a town is automatically granted title or easement to a statutory "three rod" right-of-way. (*Id.* at 7.)

Third, Plaintiffs argue that Defendant has misrepresented the factual details related to its res judicata argument and mischaracterizes what was at issue and decided in the earlier state

court actions, as well as improperly attempts to merge multiple distinct takings into a single event. (*Id.* at 7-10.)

Fourth, Plaintiffs argue that there is no controlling case law to suggest that N.Y. Highway L. § 189 immunizes Defendant for the taking of Plaintiffs' property that occurred as a result of Defendant's changes or expansions to the drainage systems for the roads, especially as evidence suggests that Defendant's actions were not taken in good faith. (*Id.* at 10-12.)

Fifth, Plaintiffs argue that the submitted declaration of Mr. Hribar adds new facts that cannot be used to support dismissal and that are contradicted by his own previous declaration and other submitted evidence. (*Id.* at 12-13.)

**5. Supplemental Submissions**

On September 4, 2026, Plaintiff filed a motion for leave to file a supplemental submission regarding a decision filed on September 2, 2026, dismissing one of Plaintiffs' pending state court actions, which included a copy of that decision and briefing containing Plaintiffs' arguments as to why this new development does not undermine Plaintiffs' claim in this federal action. (Dkt. No. 85.) The Court granted that motion on September 14, 2026, and Defendant, upon order of the Court, filed a response regarding the supplemental submission on September 21, 2026. (Dkt. Nos. 86, 87.) The Court has considered these submissions when rendering its Decision and Order.

## II. GOVERNING LEGAL STANDARD

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a

challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal"

notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 555-70. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 555. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for

relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3)

documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[1]

## III. ANALYSIS

After careful consideration, the Court answers the question of whether Plaintiffs have stated a plausible claim in the negative for the reasons stated in Defendant's memoranda of law. *See, supra*, Parts I.B.1. and 3 of this Decision and Order. To those reasons, the Court adds the following analysis.

---

[1] *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

As an initial matter, the Court declines to convert Defendant's motion to dismiss into a motion for summary judgment as Plaintiffs seem to request. Contrary to Plaintiffs' argument, nothing in the arguments raised by Defendant inherently requires consideration of extrinsic evidence other than the various state court complaints and decisions (of which the Court is permitted to take judicial notice[2]), and, to the extent that either party has submitted extrinsic evidence that does not fall into any of the recognized exceptions for proper consideration on a motion to dismiss, the Court has not considered any such evidence in the resolution of this motion.

Defendant argues first and foremost that Plaintiffs' claim in this federal action is barred under the doctrine of claim preclusion based on decisions rendered in multiple prior state court actions. Under New York law (which applies for the purposes of assessing claim preclusion because the relevant prior decisions are from a New York state court), "a prior court decision has claim-preclusive effect when there is: (1) 'a judgment on the merits … from a prior action'; (2) 'between the same parties'; and (3) involving the same subject matter," which includes "'not only claims actually litigated but also [] claims that could have been raised in the prior litigation.'" *VDARE Found., Inc. v. James*, 162 F.4th 77, 83 (2d Cir. 2025) (quoting *In re Hunter*, 4 N.Y.3d 260, 269 [N.Y. 2005]).

---

2 *See Oudekerk v. Lehoisky*, 24-CV-0311, 2025 WL 3204486, at *3 (N.D.N.Y. Nov. 17, 2025) (Nardacci, J.) (noting that although a court cannot take judicial notice of documents filed in other courts for the truth of the matters asserted in that other litigation, it can take judicial notice of "the status of other lawsuits in other courts and the substance of papers filed in those actions" "to establish the fact of such litigation and related filings") (quoting *Schenk v. Citibank/Citigroup/Citicorp,* 10-CV-5056, 2010 WL 5094360, at *2 [S.D.N.Y. Dec. 9, 2010]; *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 [2d Cir. 1991]); *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 691 (S.D.N.Y. 2011) (noting that the court could properly consider "decisions or pleadings from other court actions").

Here, the Court notes that there can be no argument that the prior state court actions (including the most recent that was filed in 2025 while this federal action was already pending) were all between the same parties as those involved here. As to the 2018 state court action (which encompassed conduct beginning in 2006 through 2018) and the 2025 state court action specifically,[3] it is clear from a consideration of those decisions that a judgment was rendered on the merits in each: in the 2018 action, the state court dismissed Plaintiffs' claims because it found that they had not raised a triable issue of fact to support any sort of inverse condemnation as a result of the relevant changes to the drainage systems or roads; and in the 2025 action, the state court concluded that Plaintiffs' claims were barred by the doctrine of res judicata based on the decisions issued in the multiple prior state court actions and dismissed the action with prejudice. (Dkt. No. 61, Attach. 3; Dkt. No. 85, Attach. 3.) The only question is therefore whether those actions involved claims that arise out of the same transaction or series of transactions as the ones alleged in this federal action. The Court finds that they do.

The 2018 state court complaint asserted a claim of inverse condemnation. (Dkt. No. 61, Attach. 2.) Inverse condemnation is merely a state-law claim to assert a taking of property by the government without just compensation in a situation where there has been no formal

---

[3] The Court declines to specifically assess the preclusive effect of the 2024 state court action because although the claims there related to roadwork and expansion on Tripp Hill Road and Murdock Road, they do not appear to have been related to water intrusion onto Plaintiffs' property as the current federal action and the other state court actions were. (Dkt. No. 61, Attach. 6.) The Court does note, however, that the action asserted claims for inverse condemnation and a violation of the Fifth Amendment specifically. (*Id.*)

The Court also declines to specifically assess the 2022 state court action because, although the claims in that action also related to certain work performed on Tripp Hill Road, it related to the cutting of vegetation rather than water runoff intrusion, although, as with the 2024 action, it involved claims for inverse condemnation and a violation of the Fifth Amendment. (Dkt. No. 61, Attach. 9.)

condemnation proceedings. *See In re Willis Ave. Bridge Replacement*, 177 A.D.3d 453, 455 (N.Y. App. Div. 1st Dep't 2019) ("Inverse condemnation is the 'manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted.'") (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 785-86 [N.Y. 2012]). While it is true that at the time Plaintiffs filed this complaint, a federal Fifth Amendment Takings claim would not have been ripe until the state court denied the claim for just compensation under state law,[4] that Plaintiffs could not have specifically asserted the federal claim at that time does not change the fact the relevant claims in that action and this one are essentially asserting the same type of violation (albeit under different authority) and are based on the same factual circumstances and transaction or series of transactions. The Supreme Court relevantly recognized in *Knick* that "a state court's resolution of a claim for just compensation under state law generally has preclusive effect on any subsequent federal suit" as part of the basis for its ultimate finding. *Knick*, 588 U.S. at 184 (noting that, under the old rule, "[t]he takings plaintiff thus finds himself in a Catch-22: He cannot go to federal court without going to state court first; but if he goes to state court and loses, his claim will be barred in federal court"). As a result, the fact that a federal claim might not have been ripe at the time Plaintiffs filed the 2018 state court action does not prevent the Court from applying preclusion related to the federal claim asserted in this action.[5]

---

[4] *Knick v. Twp. Of Scott, PA,* 588 U.S. 180 (2019), overruled that point of law on June 21, 2019.

[5] The Court also notes that, to the extent preclusion would be inappropriate as to the period pre-*Knick* (which the Court does not find to be the case), none of the conduct and resulting harm alleged in the 2018 state court action would be timely in any event. The statute of limitations for a Section 1983 claim is three years pursuant to New York law. *Polizzi v. Cnty. of Schoharie*, 720

The 2025 state court complaint and the current federal action essentially assert the same claim, albeit pursuant to different theories: the state court complaint seeks a declaration as to whether Defendant possesses a drainage easement or other property right permitting it to, as is most relevant, perform roadwork and other road drainage improvement and maintenance projects that redirect and discharge stormwater onto Plaintiffs' property; and the Complaint here asserts a claim that Defendant's actions in performing that same roadwork and road drainage improvement and maintenance projects that created flooding on their property as a result of redirected stormwater constitutes a Taking of their property pursuant to the Fifth Amendment. In effect, these claims, despite being asserted in two different ways, seek an answer to the same question, namely whether the redirection of water runoff onto Plaintiffs' property by Defendant was an unlawful invasion of Plaintiffs' property rights. The fact that they are couched in different terms does not make them different claims for the purposes of the claim preclusion

F. Supp. 3d 141, 146-47 (N.D.N.Y. 2024) (Hurd, J.) (quoting *Harris v. Tioga Cnty.*, 663 F. Supp. 3d 212, 234 [N.D.N.Y. 2023]; citing *Eagleston v. Guido*, 41 F.3d 865, 871 [2d Cir. 1994]). For the purposes of this statute of limitations, "[a] 'claim accrues when the plaintiff knows or has reason to know of the harm.'" *Sikorsky v. City of Newburgh, N.Y.*, 136 F.4th 56, 62 (2d Cir. 2025) (quoting *Eagleston*, 51 F.3d at 871]). Because Plaintiffs had sufficient knowledge of the harm caused by Defendant's alleged actions encompassed therein to file the complaint asserting a claim for inverse condemnation in 2018, their Takings claims can be said to accrue at that time for the purposes of assessing timeliness of the current federal action. *See Cangemi v. United States*, 939 F. Supp. 2d 188, 199 (E.D.N.Y. 2013) (noting that "'a claim stabilizes when the permanent nature of the taking is evident.'") (quoting *Banks v. United States*, 314 F.3d 1304, 1309 [Fed. Cir. 2003]). Even if the Court were to consider the fact that Plaintiffs' claim could not have been considered ripe until June 21, 2019 (when *Knick* eliminated the need to wait for the conclusion of the state court proceedings to file a federal claim), any tolling that could be applied to start the accrual clock at that date would still mean that all of the conduct alleged in the 2018 complaint would be time-barred, given that Plaintiffs filed their initial Complaint in this action approximately five-and-a-half years after *Knick* was decided. Thus, even if the conduct and harms alleged in the 2018 state court action were not subject to preclusion, they would be dismissed as untimely.

analysis. *See Karamoko v. New York City Housing Auth.*, 170 F. Supp. 2d 372, 377 (S.D.N.Y. 2001) (stating that "[a] party may not escape the effects of res judicata by 'splitting his claim into various suits, based on different legal theories,'" but rather "'it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action [for res judicata purposes], not the legal theory upon which a litigant relies'") (quoting *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 110 [2d Cir. 2000]; *Saud v. Bank of New York*, 929 F.2d 916, 919 [2d Cir. 1991]); *see also Li v. City of New York*, 240 A.D.3d 832, 834 (N.Y. App. Div. 2d Dep't 2025) ("'Once a claim is brought to a final conclusion, *all other claims arising out of the same transaction or series of transactions* are barred, even if based upon different theories or if seeking a different remedy.'") (quoting *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 111 [N.Y. 2021]) (emphasis in original).

Notably, when assessing whether claim preclusion should be applied to two claims, New York law uses a "transactional approach" that assesses "whether the claims turn on facts that 'are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Simmons*, 37 N.Y.3d at 111-12 (quoting *Xiao Yang Chen v. Fischer*, 6 N.Y.3d 94, 100 [N.Y. 2005]). Here, Plaintiffs' claims in the 2025 state court action are based on a nearly identical set of facts and circumstances as those presented here, and treatment of those claims together would not only be convenient but also generally conform to the parties' expectations. Specifically, the 2025 state court complaint alleged stormwater intrusion onto their property since 2014, including that which was caused by the decommissioning of certain swales, deforestation of areas of the watershed, installation or alteration of structures such as culverts

and drainage ditches, and the widening of Tripp Hill Road, all of which occurred through 2024. (Dkt. No. 61, Attach. 11.) The allegations in Plaintiff's Second Amended Complaint here encompass nearly identical conduct, with the only "new" allegation being related to the expansion and creation of certain berm breaks on Murdock Road in June 2025 that also diverted water runoff from the road. (Dkt. No. 59.) However, this more recent allegation is merely part of the same transaction or series of transactions as the rest of the allegations. Because Plaintiffs' Takings claim (or an analogous version thereof) could have been raised as part of the prior action and reasonable parties would generally expect that it would have been so raised based on the commonality of the factual circumstances with the quiet title/declaratory judgment claims Plaintiffs did bring in that action, the Court finds that claim preclusion applies related to the 2025 state court action (and specifically to the decision of September 2, 2026, that dismissed that action). Claim preclusion also applies to the 2018 action (and to the decision of June 9, 2023, that dismissed that action) related to earlier conduct alleged in the current federal action that may not be covered by the complaint in the 2025 action based on the fact Plaintiffs asserted fundamentally the same claim in that action related to the same underlying factual circumstances.

Because claim preclusion applies, the Court finds that Plaintiffs' Second Amended Complaint must be dismissed.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 61) is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' Second Amended Complaint is **DISMISSED**.

Dated: September 29, 2026
Syracuse, New York

Glenn T. Suddaby
U.S. District Judge